UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHANDARY TATE,

    Plaintiff,

v.                                    Case No.:   3:20-cv-662-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Chandary Tate seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

   A.    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C. Procedural History

Plaintiff filed an application for supplemental security income benefits on July 21, 2017, alleging disability beginning March 1, 2013. (Tr. 68, 172-181). The application was denied initially on October 18, 2017, and upon reconsideration on

December 11, 2017. (Tr. 68, 81). Plaintiff requested a hearing and on June 13, 2019, a hearing was held before Administrative Law Judge ("ALJ") James Cumbie. (Tr. 25-63). On July 19, 2019, the ALJ entered a decision finding Plaintiff not under a disability since July 21, 2017, the date the application was filed. (Tr. 11-20).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on April 28, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on June 26, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

### D.   Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 21, 2017, the application date. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairment: "hip dysfunction." (Tr. 13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 15).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional

> capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except the claimant must be permitted to alternate sitting and standing positions every thirty minutes; and never climb ladders, ropes, and scaffolds.

(Tr. 15).

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as an assembler and soldering machine operator. (Tr. 18). The ALJ further found this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 18).

Alternatively, at step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 19). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1) marker, DOT 209.587-034, light, unskilled, SVP 2

(2) mail clerk, non-postal, DOT 209.687-026, light, unskilled SVP 2

(3) router, DOT 222.587-038, light unskilled, SVP 2

(Tr. 19). The ALJ concluded that Plaintiff had not been under a disability since July 21, 2017, the date the application was filed. (Tr. 20).

## II.     Analysis

On appeal, Plaintiff raises three issues:[1] (1) whether the ALJ erred in not finding Plaintiff's psychological impairment severe or including any limitations in the RFC for this impairment; (2) whether the ALJ failed to properly consider Plaintiff's subjective complaints; and (3) whether the ALJ considered all of Plaintiff's impairments singly and in combination in assessing her RFC. (Doc. 21, p. 5).[2] The Court will address each issue in turn.

### A.     **Whether the ALJ erred in not finding Plaintiff's psychological impairments severe or including any limitations in the RFC for this impairment**

Plaintiff argues the ALJ erred in finding Plaintiff's mental impairments non-severe. (Doc. 21, p. 8). She claims the reasons the ALJ afforded for finding Plaintiff's mental impairments non-severe were not supported by substantial evidence. (Doc. 21, p. 8).

At step two, the ALJ found Plaintiff had mild limitations in the four "paragraph B" functional areas in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace;

---

[1] While Plaintiff lists four issues in her Memorandum, she does not separate her arguments in the Memorandum by issue. (Doc. 21, p. 5-15). In reviewing the issues, the Court finds the last two issues both raise arguments concerning the assessment of Plaintiff's RFC. (Doc. 21, p. 5). The Court will address them together.

[2] Plaintiff's Memorandum does not include page numbers. The Court will refer to the CM/ECF page numbers for this document.

and adapting or managing oneself. (Tr. 14-15; *see also* 20 C.F.R. § 416.920a(b)(2), (c)(3)). Because the ALJ found that Plaintiff's medically determinable mental impairment caused no more than mild limitations in any of these functional areas, the ALJ found Plaintiff's mental impairment non-severe. (Tr. 15). The ALJ also reasoned that Plaintiff had no history of inpatient psychiatric admission, she was treated for anxiety with prescribed medication, even with reports of depression and anxious mood her evaluations were otherwise within normal limits, her treatment reports did not depict her as psychiatrically disturbed or cognitively impaired, and she did not report on disability reports nor did she testify that her mental functioning or ability to work was significantly compromised by psychological symptoms. (Tr. 14).

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§ 404.1522(a), 416.922(a). In other words, a severe impairment is an impairment or combination thereof that *significantly* limits a claimant's abilities to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. The claimant bears the burden at step two of proving that he has a severe impairment or combination of impairments. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment ... is enough to satisfy the requirement of step two and allow the ALJ to proceed to step three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted).

With this standard in mind, even if the ALJ should have characterized Plaintiff's mental impairments as severe impairments, any error is harmless because the ALJ characterized another impairment – hip dysfunction – as severe. (Tr. 13). The ALJ then advanced to step three of the sequential evaluation. *See Ball*, 714 F. App'x at 993. With step two satisfied, the issue then becomes whether the ALJ considered all of Plaintiff's mental limitations in assessing the RFC.

The ALJ found consultative examiner Donald S. Freedman, M.D.'s October 2, 2017 assessment persuasive. (Tr. 18). Dr. Freedman found Plaintiff: cooperative; awake; alert; oriented to place, person and time; had an appropriate mood and affect; was interactive and responsive; had clear speech; was able to understand and follow instructions; had adequate social skills; had good eye contact; and had an appropriate appearance. (Tr. 406). While his impressions included depression, he included no work-related limitations due to Plaintiff's mental abilities. (Tr. 406).

The ALJ also relied on the state agency psychological consultants findings. (Tr. 18). In a September 13, 2017 Psychiatric Review Technique evaluation, Kevin Ragsdale, Ph.D. found mild limitations in the paragraph B criteria. (Tr. 74). Dr. Ragsdale noted at Plaintiff's initial appointment, her mental status evaluation showed depressed/anxious mood, but was otherwise within normal limits. (Tr. 74). He also noted that her treatment in 2017 did not depict her as psychiatrically disturbed or cognitively impaired, and Plaintiff did not report that her mental

functioning or ability to work was significantly compromised by psychological symptoms. (Tr. 74). Dr. Ragsdale found no evidence that "supports the presence of a severely limiting mental disorder." (Tr. 74). In December 2017 on reconsideration, state agency psychological consultant James Mendelson, Ph.D. concurred with Dr. Ragsdale's findings. (Tr. 87).

The ALJ did consider Plaintiff's mental impairments and found no associated work-related mental limitations when assessing her RFC. The ALJ considered the medical records in evidence related to her mental impairments at step two and determined Plaintiff had only mild limitations in the four functional areas. Then, in formulating the RFC, the ALJ relied on Dr. Freedman's, Dr. Ragsdale's, and Dr. Mendelson's opinions, which he found persuasive, that Plaintiff did not have additional work-related limitations based on her mental impairments. The Court finds substantial evidence supports the ALJ's findings at step two and in assessing Plaintiff's RFC concerning her alleged mental impairments.

**B.     Whether the ALJ failed to properly consider Plaintiff's subjective complaints**

Plaintiff argues the ALJ did not properly evaluate Plaintiff's subjective symptoms of pain. (Doc. 21, p. 9). Plaintiff claims the ALJ's statement that Plaintiff's pain is "well managed with medication compliance" contradicts a treatment note showing that Plaintiff's pain was "poorly controlled." (Doc. 21, p. 9; Tr. 13, 645). Plaintiff also contests the ALJ's characterization from Dr. Freedman

that she was putting forth "questionable effort" in his evaluation. (Doc. 21, p. 10; Tr. 407-408). Plaintiff contends that the ALJ did not understand her type of pain that it is not caused by a musculoskeletal abnormality. (Doc. 21, p. 11).

A claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210). When evaluating a claimant's testimony, the ALJ should consider: "(1) the claimant's daily activities; (2) the 'duration, frequency, and intensity' of the claimant's symptoms; (3) '[p]recipitating and aggravating factors'; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms." *Id.* (quoting 20 C.F.R. §§ 404.1529(c), 416.929(c)(3)). The ALJ must consider these factors given all of the evidence of record. *Id.* And if the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach

this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and backets omitted).

The ALJ found that even though Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 16). In support, the ALJ acknowledged that Plaintiff experienced chronic pain, secondary to chronic right hip pain, low back pain, and abdominal pain. (Tr. 16, 17). But the ALJ noted that the medical records show Plaintiff to have a steady gait with no abnormal, involuntary movements and no difficulties with maintaining balance. (Tr. 16, 17).

The ALJ also noted that there is no imaging report to document severe derangement of hip or back. (Tr. 17). Plaintiff does not claim there are imaging reports, but claims that her type of pain would not appear on imaging reports. (Doc. 21, p. 12). Even if the Court accepts Plaintiff's contention that her "neuropathic

pain" would not appear on imaging reports, the ALJ articulated many other reasons to find Plaintiff's subjective statements inconsistent with the medical and other evidence of record.

The ALJ specifically referred to Dr. Freedman's evaluation and acknowledged Plaintiff's reported chronic right hip and low back pain. (Tr. 16). But the ALJ also noted that Dr. Freedman's physical evaluation was unremarkable in that he noted normal range of motion in the upper extremities, 5/5 muscle strength in the lower extremities, and normal range of motion in the cervical spine. (Tr. 16-17). The ALJ also pointed out that Dr. Freedman observed no manipulative limitations, no weakness, and no gait abnormalities. (Tr. 16). The ALJ noted that Dr. Freedman found a decreased range of motion in the right hip and reduced range of motion in the lumbar spine, but found Plaintiff was putting forth questionable effort on the lumbar and right hip range of motion test. (Tr. 17). Plaintiff argues that her efforts were not questionable, rather she was "guarding" her lumbar spine to avoid pain. (Doc. 21, p. 10). While this argument may be plausible, it is undisputed that Dr. Freedman noted that Plaintiff's efforts on some portions of the evaluation were questionable and the ALJ properly cited Dr. Freedman's comments and could rely on them. (Tr. 17, 407-408).

The ALJ also found that Plaintiff's pain was reduced with treatment, specifically by taking the medication, Tramadol. (Tr. 16). The ALJ explained that

reports show that the Tramadol medication helped a lot to reduce her pain. (Tr. 17). Plaintiff argues that in a September 26, 2017 progress note, Adrienne Deberry, PharmD noted that Plaintiff's pain was "[p]oorly controlled." (Doc. 21, p. 9). The Court agrees that in this one progress note of September 2017, Plaintiff reported that Tramadol "helps her a lot to reduce pain," and that Dr. Deberry noted that Plaintiff's pain was "[p]oorly controlled" and "[n]europathic pain continues to predominate." (Tr. 645). But as the ALJ recognized, other records from March and December 2018, and February 2019 show that Plaintiff continued to report that Tramadol helped "a lot to reduce her pain" and that her pain was "[f]airly controlled." (Tr. 16-17, 601, 626, 638). Plus, the ALJ found in a progress note from November 2018, Plaintiff denied joint pain, and joint stiffness. (Tr. 17, 666).

Finally, the ALJ also discussed that Plaintiff was able to care for her own needs. (Tr. 17). The ALJ found Plaintiff's daily activities showed a greater functional capacity than alleged in her subjective statements. (Tr. 17). He cited Plaintiff's testimony that she is able to wash dishes, mop and sweep floors, go grocery shopping, though she rides a motorized cart, and drives when necessary. (Tr. 17). The ALJ found the ability to participate in these activities was not consistent with her allegations of disabling functional limitations. (Tr. 17).

For these reasons, the Court finds that the ALJ considered all of the evidence of record and clearly articulated reasons to find Plaintiff's statements concerning the

intensity, persistence and limiting effects of her alleged symptoms were not entirely consistent with the medical and other evidence of record. The ALJ's decision on this issue is supported by substantial evidence.

### C. Whether the ALJ considered all of Plaintiff's impairments singly and in combination in assessing her RFC

Plaintiff argues that by the ALJ finding only one severe impairment, hip dysfunction, he did not consider the combined effects of all of Plaintiff's physical and mental impairments. (Doc. 21, p. 12-13). Plaintiff argues limitations from her chronic pain and anxiety limit her functionality. (Doc. 21, p. 13).

Prior to step four, the ALJ must assess Plaintiff's RFC, which is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the action. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3). So, the ALJ must consider *all* of a claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Id.* (citing 20 C.F.R. § 404.1545(b)-(d)).

As discussed above, the ALJ thoroughly considered Plaintiff's chronic pain and mental impairments in combination with all of her alleged impairments. The ALJ found Plaintiff's statements concerning the limiting effects of her symptoms were not entirely consistent with the medical records and other evidence of record and the Court finds this determination is supported by substantial evidence. And relying on the medical records, the ALJ found Plaintiff has no limitations from her alleged mental impairments, which the Court finds is supported by substantial evidence. The ALJ considered Plaintiff's impairments whether severe or non-severe in combination when assessing Plaintiff's RFC. (*See* Tr. 15-16 ("In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 [C.F.R. §] 416.929 and SSR 16-3p.")). The Court finds the ALJ's RFC assessment is supported by substantial evidence.

### III.  Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 7, 2021.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties